**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**ANGELA C. DUNCAN, ON BEHALF**
**OF ANGELA C. DUNCAN REVOCABLE TRUST**

Plaintiff,

Case No.: 1:26cv23249

v.

**NICKLAS SARNICOLA aka NICK SARNICOLA**, individually, and
**CATALYST SOLAR, INC.**, a Nevada corporation,

Defendants.

_____/

### COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS AND RELATED CLAIMS AND DEMAND FOR JURY TRIAL

Plaintiff, ANGELA C. DUNCAN ON BEHALF OF ANGELA C. DUNCAN REVOCABLE TRUST ("Plaintiff"), by and through undersigned counsel, alleges:

### I. NATURE OF THE ACTION

1. This is an action arising from Defendants' solicitation and sale of securities in Catalyst Solar, Inc. through materially misleading statements, omissions of material fact, and improper relationship-based inducement, in violation of federal securities laws and applicable state law.

2. At all times relevant to Plaintiff's investment, Defendants failed to disclose that the entity identified as Catalyst Solar Inc. had only recently been formed on or about May 30, 2023, following a conversion from Catalyst Solar LLC, and that the prior LLC was managed by a separate entity, ARRIVE BY TWENTY-FIVE, LLC, a Florida limited liability company that was subsequently revoked in 2024. Defendants further failed to disclose that the Company was not maintaining corporate compliance and was subject to administrative revocation under state law, which ultimately occurred. This information was uniquely within Defendants' knowledge and was never communicated to Plaintiff. Instead,

1

Defendants presented the Company as an operational, growing enterprise, while omitting material facts concerning its corporate structure, control, compliance deficiencies, risk of revocation, and overall instability—facts that a reasonable investor would have considered important in deciding whether to invest.

3. The investment at issue constitutes a "security" as a matter of law, including an investment contract under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946), and controlling Eleventh Circuit authority, *SEC v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999), because Plaintiff invested money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of Defendants. In determining whether an instrument constitutes a security, courts look to the economic reality of the transaction rather than its form.

4. Unlike a traditional arm's-length securities transaction, Defendant Nick Sarnicola ("Sarnicola") targeted Plaintiff through a preexisting personal relationship, cultivating trust through frequent, informal, and at times intimate communications before introducing the investment opportunity. After establishing that relationship, Sarnicola directly solicited Plaintiff to invest in Catalyst Solar, Inc. (the "Company"), presenting the opportunity as a high-growth venture in the solar and renewable energy space with significant forward momentum.

5. In connection with that solicitation, Defendants made a series of material representations regarding the Company's performance, growth trajectory, and anticipated success, including statements concerning expanding sales networks, increasing deal flow, and substantial anticipated revenue tied to pending installations and investor participation.

6. These communications were not limited to formal offering materials. Rather, they were conveyed through direct communications, informal messaging, and personalized outreach, which emphasized optimism and opportunity while omitting critical risk factors.

7. At the same time, Defendants structured the offering as a private placement purportedly exempt from registration under federal securities laws, including reliance on Regulation D,

and required Plaintiff to execute a Subscription Agreement characterizing the investment as speculative and subject to total loss.

8.  Despite those formal disclaimers, Defendants' extra-contractual statements and omissions materially altered the total mix of information available to Plaintiff and were intended to, and did, induce her investment.

9.  In or about October 2023, Plaintiff invested approximately $100,000.00 in the Company in reliance on Defendants' personal representations.

10. On October 13, 2023, Duncan received an email communication that her investment had been received, and that details of her investment could be viewed on a secure platform.

11. No such details were ever provided on the platform, and the platform subsequently became unavailable.

12. On or about March 29, 2024, a communication was circulated to participants and affiliates of Catalyst Solar, including Plaintiff, following a company meeting. This communication emphasized what was described as a transition from a "beta" phase into a "launch" phase of operations and conveyed urgency regarding onboarding for solar-related initiatives in light of changes in the real estate market. The message encouraged recipients to schedule individual strategy calls, to introduce company representatives to real estate brokers, and to participate in ongoing sales efforts. It further referenced expansion opportunities, including the onboarding of additional brokers on a limited, first-come basis. The overall communication conveyed that the Company was actively progressing, expanding, and positioned for immediate operational growth.

13. Despite the invitation to be updated via the one-on-one call, Duncan requested the personal meeting but was rejected. Rather, she was instructed to join the ZOOM call with all investors.

14. On or about May 10, 2024, Defendant Sarnicola circulated a written communication to existing investors, including Plaintiff, purporting to provide an update regarding the status of Catalyst Solar. In that communication, Sarnicola described what he characterized as a

positive development for the Company, including the addition of a new "partner" with experience in solar sales and mortgage lending, and represented that this development would support the Company's growth and expansion. The communication further conveyed that the Company's original business strategy remained "on track," that market conditions were favorable, and that operational improvements had been implemented to streamline internal processes. The update emphasized increased receptiveness in the marketplace and suggested that the Company was positioned to capitalize on industry trends. Notably, the communication also stated that the investment round in which Plaintiff participated remained open and encouraged existing investors to introduce new potential investors to the Company. This was the only update Duncan received.

15. Sarnicola continued to request more capital from Duncan for other ventures. In response, on or about August 29, 2024, Duncan requested an update on the company but was again ignored. Additionally, the investor portal had no data.

16. Plaintiff repeatedly requested follow-up, data, and transparency regarding the status of her investment, but Defendants failed to provide any meaningful response. Instead, Sarnicola left Plaintiff entirely in the dark after accepting her $100,000.00, causing her to grow increasingly concerned that Defendants were not performing as promised. In response to this lack of communication and apparent nonperformance, Plaintiff again demanded rescission of her investment. Rather than provide the requested information or return her funds, Sarnicola made separate, direct assurances that Plaintiff would be repaid in full. These assurances were made within the context of the same personal relationship used to induce the investment and were intended to placate Plaintiff and delay enforcement action. Plaintiff reasonably relied on these representations and, as a result, refrained from taking immediate legal action. On or about April 2, 2026, Defendant Sarnicola circulated a written communication to investors announcing that Catalyst Solar was ceasing operations. In that communication, Sarnicola attributed the Company's failure to external political and regulatory factors affecting the solar industry, including the alleged elimination of tax incentives and declining consumer demand. He further claimed that, despite various efforts to sustain the business, the Company could no longer continue operations. Sarnicola stated

that he intended to repay investors over a period of approximately twelve to twenty-four months on a pari passu basis, while expressly disclaiming any legal obligation to do so and characterizing repayment as a non-binding, personal intention.

17. Defendants later attributed the Company's collapse to external political and market conditions, despite failing to disclose material risks relating to the Company's dependence on such conditions at the time of solicitation. Defendants' attempt to blame the Company's collapse on external political and market conditions is a transparent post hoc justification that does not excuse their prior misconduct. At the time of solicitation and throughout subsequent communications, Defendants failed to disclose material facts, including the Company's alleged dependence on government incentives, its vulnerability to policy changes, and the instability of its underlying business model. Instead, Defendants affirmatively conveyed a narrative of growth, momentum, and operational viability. Having induced Plaintiff's investment through that misleading narrative, Defendants cannot now rely on purported external forces to explain away the failure. Such after-the-fact explanations underscore, rather than cure, the materially misleading nature of Defendants' prior statements and omissions. Following the collapse, Sarnicola issued a written communication to investors admitting that Catalyst Solar was shutting down and that prior business strategies had failed. This explanation is factually inaccurate and reflects risks that were known or knowable at the time of solicitation and never disclosed.

18. Over the course of the investment period, Defendants maintained a consistent narrative of growth, operational viability, and expanding opportunity through direct communications and investor updates, while simultaneously withholding material information regarding the Company's true financial condition and operational instability. Following Plaintiff's October 2023 investment, Defendants failed to provide any meaningful data, reporting, or transparency despite repeated requests, and instead continued to reinforce the false impression that the Company remained on track. This misleading narrative persisted through at least May 2024, when Defendants issued their only formal update portraying the business as progressing and positioned for expansion. Thereafter, Defendants ceased providing substantive updates altogether, ignored Plaintiff's requests for information, and

continued to solicit additional capital, all while the Company's condition deteriorated. The truth was ultimately revealed on April 2, 2026, when Defendant Nick Sarnicola disclosed that Catalyst Solar was ceasing operations and could not repay investors except, if at all, over an extended and uncertain period, thereby correcting prior misrepresentations and exposing the concealed risks that resulted in the total loss of Plaintiff's investment.

Forwarded message
From: Nick Sarnicola <nick@nicksarnicola.com>
Date: Thu, Apr 2, 2026 at 11:53 PM
Subject: Tough Update – Catalyst Solar
To:
CC: Nick Sarnicola <nick@nicksarnicola.com>

Catalyst Investors,

First of all, I want to deeply express my gratitude to each and every one of you, as I am friends with all of you. You also know that I am very direct and incapable of bullshit.

Regardless of your politics, and it is likely that my politics are the same as yours, I come to you with disheartening news because of political decisions.

Solar was already a challenging industry because of the education process for everyone involved. However, the new administration unfortunately, has eliminated most tax credits and benefits having to do with Solar.

Despite our efforts over the last year to try different strategies, specifically but not limited to engaging a top AI outbound dialer system ... the sentiment around the products is extremely low. I believe the sentiment has less to do with the removal of the tax credits and other benefits... And more to do with just how much people are engaged with social media and how it influences their lives.

No matter what side of the politics you are on, you are either celebrating the demise of renewable energy... Or you are cursing the removal and are extremely tentative to buy.

As most of you know, I had a plan to activate an independent salesforce through a MLM company that I have. Right before that went live is when the political environment changed 180°.

I have done everything I can to keep the ship sailing. Including removing everybody, but one sales person.

Sadly, this is a message to inform all of you that Catalyst Solar needs to close its doors. Because I am personal friends with all of you... Please reach out when you see this and I will get back to each of you over the next few days.

I apologize to each of you for letting you down. I've never been in a situation where the political environment could control my entire business outcome.

My plan is to take the next 12-24 months to pay back all of you parapasu. I know I am not required to do this, nor am I making a legal commitment to you....im simply sharing with you my personal intention because of my personal connection to of you.

Let's talk 1 on 1 so I can answer any questions you may have.

   - Nick

19. Having chosen to speak about the Company's growth, operations, and prospects, Defendants were obligated to disclose all material facts necessary to make those statements not misleading, including the Company's true financial condition, operational instability, and inability to sustain its business model. Defendants' failure to do so rendered their affirmative statements materially misleading half-truths and imposed a duty to disclose the very risks and deficiencies they concealed.

20. At all relevant times, Plaintiff reasonably relied on Defendants' materially false and misleading statements and omissions in deciding to invest in, and refrain from withdrawing

6

from, Catalyst Solar. Plaintiff's reliance was justified in light of the direct, repeated, and personalized communications made by Defendant Nick Sarnicola, the relationship of trust cultivated prior to and during the solicitation, and Defendants' exclusive access to material information concerning the Company's financial condition and operations. Defendants' failure to provide requested information further deprived Plaintiff of the ability to independently assess the investment, thereby reinforcing her reliance. Any generalized disclaimers contained in the Subscription Agreement do not bar Plaintiff's claims, as Defendants' extra-contractual statements, selective disclosures, and omissions materially altered the total mix of information available and were intended to induce Plaintiff's investment and continued forbearance.

21. Defendants have failed and refused to repay Plaintiff.

22. Plaintiff made multiple demands for repayment, including at least two prior demands, both of which were ignored or rejected.

23. Defendants' conduct constitutes securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, as well as common law fraud and related claims.

24. Plaintiff seeks recovery of her full investment, together with all available legal and equitable remedies.

## II. JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934.

26. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

28. In connection with the acts alleged herein, Defendants used the means and instrumentalities of interstate commerce, including electronic communications, text messages, email, and wire transfers. Defendant never executed the Subscription Agreement, and accordingly

7

Plaintiff is not bound by, nor subject to, any jurisdiction or venue selection provisions contained therein.

## III. THE PARTIES

29. Plaintiff ANGELA C. DUNCAN ON BEHALF OF ANGELA C. DUNCAN REVOCABLE TRUST is a resident of Florida who invested approximately $100,000.00 in Catalyst Solar.

30. Defendant NICK SARNICOLA is a resident of Florida and, at all relevant times, was the founder, principal, and controlling person of Catalyst Solar, Inc., and personally participated in the solicitation of Plaintiff's investment.

31. Defendant CATALYST SOLAR, INC., is a Nevada corporation that conducted business nationwide, including within this District, and was the issuer of the securities sold to Plaintiff.

## IV. FACTUAL ALLEGATIONS

### A. Relationship-Based Solicitation

32. Defendants did not rely solely on formal offering materials to solicit Plaintiff's investment. Instead, they employed direct, informal, and highly personalized communications designed to influence Plaintiff outside the confines of traditional, arm's-length investment channels.

33. In furtherance of that effort, Sarnicola engaged in ongoing, informal communications with Plaintiff, including text messages and direct exchanges that were personal, familiar, and, at times, intimate in nature, all of which were designed to cultivate trust, reduce skepticism, and create a heightened level of personal reliance.

34. After establishing this relationship and trust, Sarnicola deliberately transitioned from personal communications to investment solicitation, expressly inviting Plaintiff to consider investing in the Company.

35. These communications constituted offers and solicitations of securities made through interstate communications and are subject to the anti-fraud provisions of federal securities laws.

8

## B. Material Misrepresentations and Omissions

36. In connection with the solicitation of Plaintiff's investment, Defendants made materially false and misleading statements of fact, including but not limited to representations that:

   a. the Company was experiencing significant growth and expansion;
   b. substantial deal flow and revenue generation were imminent;
   c. investor demand for the offering was strong; and
   d. the Company was positioned for continued success and scalability.

37. These representations were presented in a manner designed to create urgency and confidence while omitting material adverse facts necessary to make such statements not misleading. Defendant's attempt to attribute the Company's collapse to the purported "elimination" of solar tax credits is demonstrably false and serves as a transparent post hoc excuse for prior misconduct.

38. At all times relevant to Plaintiff's investment and thereafter, the federal Investment Tax Credit, as extended and expanded under the Inflation Reduction Act of 2022, remained in full force, providing substantial incentives for solar development through at least 2032. No such elimination occurred.

39. To the extent market conditions shifted, those changes were driven by well-known factors, including rising interest rates, financing constraints, and regional policy adjustments, all of which were either known or reasonably foreseeable at the time Defendants solicited Plaintiff's investment. These are precisely the types of material risks that should have been disclosed to Plaintiff. As the founder and controlling person of the Company, Defendant had access to and knowledge of these conditions when he accepted Plaintiff's investment yet failed to disclose them.

40. Having affirmatively represented that the Company was positioned for growth and operational success, Defendant cannot now recast ongoing market dynamics as an

9

unforeseeable external cause. This after-the-fact narrative does not explain the Company's failure. It underscores Defendants' failure to disclose material risks and their reliance on misleading statements to induce Plaintiff's investment.

41. Specifically, Defendants failed to disclose:

    a. the Company's true financial condition at the time of solicitation;

    b. material operational instability and execution deficiencies;

    c. the Company's dependence on uncertain external market and policy conditions; and

    d. the substantial and immediate risk that the business could not be sustained.

42. Upon information and belief, the corporate entity identified as Catalyst Solar Inc. was subsequently administratively revoked for failure to maintain compliance with state requirements. This revocation reflects pre-existing deficiencies in the Company's corporate compliance and operational stability that existed at the time of Plaintiff's investment. Defendants failed to disclose these deficiencies and the Company's risk of revocation, despite knowing or recklessly disregarding that the Company was not maintaining its corporate obligations.

43. These omissions were not inadvertent but were known to Defendant or made with severe recklessness as to their truth or falsity.

## C. The Subscription Agreement and Private Placement Structure

44. In reliance on Defendants' representations and omissions, Plaintiff executed a Subscription Agreement and invested approximately $100,000.00 in Catalyst Solar.

45. The offering was structured as a private placement under Regulation D.

46. The Subscription Agreement characterized the investment as speculative, subject to a complete loss of capital, and included provisions purporting to disclaim reliance on representations outside the offering materials.

47. Notwithstanding those provisions, Defendants made additional extra-contractual statements and omissions that materially influenced Plaintiff's decision to invest, thereby altering the total mix of information available to Plaintiff.

## D. Collapse of the Company and Admission of Failure

48. Shortly after Plaintiff's investment and subsequent demand for rescission, the Company ceased operations.

49. Sarnicola admitted in writing that the business was shutting down and that prior strategies had failed.

50. Sarnicola further represented that investors would be repaid, if at all, over time and on a pari passu basis.

51. This admission confirms that investor funds were not preserved and that the investment failed.

## E. Promise to Repay Plaintiff

52. In addition to the generalized communication to investors, Sarnicola made direct and specific promises to Plaintiff that her investment would be repaid in full, from Sarnicola personally if needed, in July of 2024.

53. These promises were clear, unequivocal, and made in the context of the personal relationship previously cultivated by Sarnicola and were intended to induce Plaintiff's continued reliance and forbearance from immediate legal action.

54. Plaintiff reasonably relied on these promises and delayed enforcement efforts based on Sarnicola's representations.

55. Defendants have failed and refused to repay Plaintiff any portion of her investment and have ignored all subsequent communications.

## F. Prior Demands

56. Plaintiff made multiple demands for repayment, including at least two prior formal demands.

11

57. Defendants failed and refused to comply with those demands.

## V. SCIENTER

58. Defendant acted with scienter, including intent to deceive, manipulate, or defraud, or, at a minimum, severe recklessness. As the founder, principal, and controlling person of Catalyst Solar Inc., Defendant Nick Sarnicola had direct knowledge of the Company's corporate status, structure, and operational condition at all relevant times.

59. At the time Defendant solicited Plaintiff's investment in October 2023, he knew, or was severely reckless in not knowing, that the Company had only recently been formed on or about May 30, 2023 following a conversion from Catalyst Solar LLC, that the prior LLC was managed by a separate entity, ARRIVE BY TWENTY-FIVE, LLC, and that the Company was not maintaining corporate compliance and faced administrative revocation, which ultimately occurred. These facts were uniquely within Defendant's knowledge and were not disclosed to Plaintiff.

60. Despite this knowledge, Defendant affirmatively represented that the Company was operational, experiencing growth, and positioned for expansion, while omitting material facts concerning its lack of corporate good standing, its limited operating history as a corporation, and its layered control structure. Defendant's failure to disclose these facts rendered his statements materially misleading.

61. Defendant further engaged in direct, personalized, and relationship-based communications with Plaintiff to cultivate trust and induce investment, while withholding critical information necessary for Plaintiff to evaluate the risks of the investment. The use of such communications to bypass formal disclosures and reduce scrutiny further supports a strong inference of scienter.

62. Defendant's subsequent conduct, including his failure to provide transparency after accepting Plaintiff's investment and his later attempt to attribute the Company's failure to external factors rather than its undisclosed structural and compliance deficiencies, further supports an inference that Defendant knew or recklessly disregarded the true condition of the Company at the time of solicitation.

12

63. The totality of these allegations, taken collectively, gives rise to a strong inference of scienter that is at least as compelling as any opposing non-fraudulent inference.

64. In addition, Defendant had direct knowledge of the Company's financial condition, operational performance, and ability to execute its business model at all relevant times.

65. Sarnicola knew or recklessly disregarded that:

   a. the Company's financial condition was materially weaker than represented;
   b. the business model was unstable and dependent on uncertain external factors;
   c. the Company faced significant operational and execution challenges; and
   d. the Company was not maintaining corporate compliance and faced administrative revocation, which ultimately occurred.

66. Despite this knowledge, Defendant affirmatively represented that the Company was experiencing growth, expansion, and increasing demand, while omitting material facts necessary to make those statements not misleading.

67. Defendants' use of direct, informal, and relationship-based communications to solicit Plaintiff's investment and reinforce confidence further supports a strong inference of scienter, as such communications were designed to bypass formal disclosures and reduce scrutiny.

68. Sarnicola's direct and unequivocal promises to repay Plaintiff in full, made after the investment and in the absence of any viable repayment mechanism, further demonstrate knowing or reckless misconduct and were intended to delay Plaintiff's enforcement of her rights.

69. Defendants' April 2, 2026, communication to investors, in which he acknowledged that the Company was ceasing operations and could not repay investors while attempting to attribute the failure to external market conditions, further supports a strong inference of scienter. That communication is inconsistent with Defendant's prior representations that

13

the Company was operational, growing, and positioned for expansion. It reflects that Defendant knew, or was severely reckless in not knowing, the Company's true condition at the time he solicited Plaintiff's investment. Defendants' effort to recast the Company's failure as the result of external forces, while omitting its structural and compliance deficiencies, further supports an inference of conscious misrepresentation.

## COUNT I
### Violation of Section 10(b) and Rule 10b-5
### (Against All Defendants)

70. Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

71. This Count arises under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

72. In connection with the offer, purchase, and sale of securities, Defendants, directly and indirectly, through the use of the means and instrumentalities of interstate commerce, including text messages, electronic communications, and wire transfers:

   a. employed devices, schemes, and artifices to defraud;

   b. made untrue statements of material fact;

   c. omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

   d. engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff.

73. The specific misrepresentations and omissions include, but are not limited to:

   a. representations that the Company was experiencing significant growth, expansion, and revenue momentum;

   b. representations that investor demand and deal flow were strong and increasing;

   c. omissions regarding the Company's actual financial instability and operational deficiencies; and

14

       d. omissions regarding the substantial and immediate risk that the Company could not sustain operations.

74. These statements were made by Sarnicola directly to Plaintiff through personalized communications, including text messages and informal solicitations, in or about October 2023 and the period immediately preceding Plaintiff's investment.

75. Defendants' statements were materially false and misleading when made because Defendants knew, or recklessly disregarded, that the Company was not operating as represented and was subject to significant undisclosed risks.

76. Defendants further engaged in a fraudulent scheme by:

       a. cultivating a personal relationship with Plaintiff to establish trust and reduce scrutiny;

       b. leveraging that relationship to solicit investment outside formal disclosure channels; and

       c. providing reassurances, including promises of repayment, to delay detection of the fraud and Plaintiff's enforcement of her rights.

77. Defendants are liable under Rule 10b-5(a) and (c) for scheme liability, as well as Rule 10b-5(b) for misstatements and omissions.

78. Under *Lorenzo v. SEC,* 587 U.S. 71, 76–78 (2019), Defendants are liable for disseminating materially misleading statements with intent to defraud, regardless of whether they were the ultimate "maker" of each statement.

79. The misrepresentations and omissions described herein were material in that a reasonable investor would have considered them important in deciding whether to invest.

80. Plaintiff reasonably relied on Defendants' misrepresentations and omissions.

81. Plaintiff's reliance was justified given:

      a. the direct nature of the communications;

      b. the relationship of trust cultivated by Sarnicola; and

      c. the absence of full and fair disclosure of material risks.

82. Plaintiff would not have invested but for Defendants' misconduct.

83. Plaintiff suffered economic loss in the amount of approximately $100,000.00.

84. Plaintiff's losses were the direct and proximate result of Defendants' materially false and misleading statements and omissions. Specifically, Defendants' misrepresentations regarding the Company's growth, operational viability, and financial condition artificially induced Plaintiff to invest and to maintain that investment under false pretenses. The truth was revealed on or about April 2, 2026, when Defendant Sarnicola disclosed that Catalyst Solar was ceasing operations, admitted that prior business strategies had failed, and acknowledged that investor funds could not be repaid except, if at all, over an extended and uncertain period. This disclosure constituted a corrective revelation of the very risks and deficiencies previously concealed, including the Company's instability, lack of viable operations, and inability to generate revenue sufficient to sustain the business. As a direct result of this revelation, the value of Plaintiff's investment was effectively eliminated, causing her to suffer economic loss in the full amount of her $100,000.00 investment. Plaintiff's damages were a foreseeable consequence of Defendants' misconduct and were not the result of independent market forces or intervening causes but rather flowed directly from the materialization of the risks that Defendants concealed.

85. As a direct and proximate result of Defendants' violations, Plaintiff has been damaged.

## COUNT II
### Violation of Section 12(a)(2) of the Securities Act
### (Against All Defendants)

86. Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

87. This Count arises under Section 12(a)(2) of the Securities Act of 1933.

88. Defendants offered and sold securities to Plaintiff by means of oral communications and written communications, including text messages, electronic communications, and direct solicitations.

89. These communications constituted prospectus-like and oral communications within the meaning of Section 12(a)(2).

90. In connection with the offer and sale of securities, Defendants made untrue statements of material fact and omitted material facts necessary to make the statements made not misleading.

91. Defendants are statutory sellers because they:

>   a. directly solicited Plaintiff's investment; and
>   b. were motivated, at least in part, by their own financial interests in the success of the offering.

92. The misstatements and omissions include those described above, including misrepresentations regarding the Company's performance, growth, and viability, and omissions regarding its financial instability and risk of failure.

93. Plaintiff did not know, and in the exercise of reasonable care could not have known, of the untruths and omissions.

94. Plaintiff relied on Defendants' communications in deciding to invest.

95. Plaintiff is entitled to rescission of the transaction or damages in the alternative, together with interest.

### COUNT III

17

**Control Person Liability (Section 20(a))**
**(Against Defendant Sarnicola)**

96. Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

97. At all relevant times, Sarnicola was a controlling person of Catalyst Solar within the meaning of Section 20(a) of the Securities Exchange Act.

98. Sarnicola exercised power and control over the Company's management, policies, and communications, including the solicitation of investors.

99. Sarnicola had the authority to control, and did control, the specific acts and statements that constitute the primary violations alleged herein.

100. Sarnicola directly participated in the solicitation of Plaintiff and the dissemination of materially misleading statements and omissions.

101. Sarnicola had the ability to prevent the violations but failed to do so.

102. By reason of the foregoing, Sarnicola is liable jointly and severally with the Company for the violations of Section 10(b) and Rule 10b-5.

**COUNT IV**
**Fraudulent Inducement**
**(Against All Defendants)**

103. Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

104. Defendants made false statements of material fact and omitted material facts in order to induce Plaintiff to invest.

105. Defendants knew or recklessly disregarded that their statements were false or misleading at the time they were made.

106. Defendants intended that Plaintiff rely on these statements.

107. Plaintiff reasonably relied on Defendants' misrepresentations and omissions.

18

108.      Plaintiff would not have invested but for Defendants' conduct.

109.      As a direct and proximate result, Plaintiff suffered damages.

## COUNT V
## Promissory Estoppel
### (Against Defendant Sarnicola)

110.      Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

111.      Sarnicola made clear and definite promises to Plaintiff that her investment would be repaid in full.

112.      Sarnicola reasonably expected Plaintiff to rely on these promises.

113.      Plaintiff did rely on these promises by delaying legal action.

114.      Plaintiff's reliance was reasonable and foreseeable.

115.      Injustice can only be avoided by enforcing the promise.

116.      Sarnicola is liable to Plaintiff for the full amount of her damages.

## COUNT VI
## Unjust Enrichment
### (Against All Defendants)

117.      Plaintiff re-alleges and incorporates the Factual Allegations as though fully set forth herein.

118.      Plaintiff conferred a direct benefit upon Defendants in the form of her $100,000.00 investment.

119.      Defendants knowingly accepted and retained that benefit.

120.      Defendants have failed to return the funds as promised.

121. It would be inequitable for Defendants to retain Plaintiff's funds without compensation.

122. Plaintiff is entitled to restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANGELA C. DUNCAN, on behalf of the ANGELA C. DUNCAN REVOCABLE TRUST, respectfully requests that this Court enter judgment in her favor and against Defendants, NICK SARNICOLA and CATALYST SOLAR, INC., and grant the following relief:

A. Award rescission of Plaintiff's investment and restitution in the full amount of $100,000.00, or, alternatively, compensatory damages in an amount to be proven at trial;

B. Award pre-judgment and post-judgment interest at the maximum rate permitted by law;

C. Award all damages recoverable under federal securities laws, including but not limited to damages pursuant to Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5, and Section 12(a)(2) of the Securities Act of 1933;

D. Hold Defendant Sarnicola jointly and severally liable as a control person pursuant to Section 20(a) of the Securities Exchange Act;

E. Award damages on Plaintiff's state law claims, including fraudulent inducement, promissory estoppel, and unjust enrichment, in an amount to be determined at trial;

F. Award equitable relief, including but not limited to disgorgement of all ill-gotten gains and restitution of all funds wrongfully obtained from Plaintiff;

G. Award Plaintiff her reasonable attorneys' fees and costs to the fullest extent permitted by law;

H. Grant such other and further legal and equitable relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 8ᵗʰ day of May 2026 by:

**/s/ Courtney Jared Bannan, Esquire**
**The Entrepreneur's Law Group**
Licensed to Practice in England and Wales -Registered Foreign Attorney
Licensed to Practice Law in Florida
Licensed to Practice Law in New York
Licensed to Practice Law in Texas
Licensed to Practice law in Utah
122 Poinsetta Street
Indialantic, Florida 32903
cjb@courtneyjaredbannan.com
954-249-2230