**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-23249-BLOOM/Elfenbein**

ANGELA C. DUNCAN,

Plaintiff,

v.

CATALYST SOLAR, INC,
and NICKLAS SARNICOLA,

Defendants.
______________________________/

**OMNIBUS ORDER ON MOTION TO SET ASIDE DEFAULT**
**AND MOTION FOR DEFAULT FINAL JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff Angela C. Duncan's ("Plaintiff") Motion for Default Final Judgment Against Defendant Nicklas Sarnicola, ECF No. [14] ("Motion for Default Final Judgment"). Defendant Nicklas Sarnicola ("Defendant") filed a Response in Opposition, ECF No. [19], to which Plaintiff filed a Reply, ECF No. [21]. Also before the Court is Defendant's Motion to Set Aside Clerk's Default, ECF No. [18] ("Motion to Set Aside Clerk's Default"). Plaintiff filed a Response in Opposition, ECF No. [21], to which Defendant filed a Reply, ECF No. [25]. The Court has considered the Motions, the supporting and opposing submissions, the record in this case, the relevant law, and is otherwise fully advised. For the reasons set forth below, the Motion to Set Aside Clerk's Default is denied and the Motion for Default Final Judgment is granted in part and denied in part.

## I. BACKGROUND

Plaintiff filed this action in May 2026, asserting against Defendant claims of Violation of Section 10(b) and Rule 10b-5 (Count I), Violation of Section 12(a)(2) of the Securities Act (Count II), Control Person Liability (Section 20(a)) (Count III), Fraudulent Inducement (Count IV),

Promissory Estoppel (Count V), and Unjust Enrichment (Count VI). ECF No. [1]. On May 25, 2026, Plaintiff served Defendant with a summons and copy of the Complaint via personal service. ECF No. [6-1].

On June 17, 2026, Plaintiff's counsel and Defendant spoke by telephone, at which time Defendant learned that his communications with counsel did not constitute a formal response to the Complaint. ECF No. [18] ¶ 2. That day, Defendant alleges that he sent an email to Plaintiff's counsel requesting a seven-day extension of time. *Id.* at 4. Defendant contends that Plaintiff's counsel did not respond. *Id.* ¶ 2. Plaintiff's counsel represents that it has no record of receiving that June 17, 2026 email. ECF No. [21] at 3. Plaintiff's counsel further explains that all of its pre-default communications with Defendant concerned settlement discussions, not Defendant's obligation to respond to the Complaint. *Id.* at 6–7.

On June 23, 2026, Plaintiff moved for clerk's entry of default as to Defendant, ECF No. [9], which the Clerk granted the next day, ECF No. [10]. On June 24, 2026, Defendant moved for an extension of time to respond to the Complaint. ECF No. [11]. The Court denied the motion for extension of time for failing to comply with Local Rule 7.1(a)(3). ECF No. [12].

On June 25, 2026, Plaintiff filed the Motion for Default Final Judgment, arguing that because (1) Defendant was properly served and failed to timely respond and (2) the well-pled allegations established his liability, the Court should grant default final judgment against Defendant. ECF No. [14]. On July 6, 2026, Defendant filed the Motion to Set Aside Clerk's Default, contending that excusable neglect—namely, his belief that his communications with Plaintiff's counsel satisfied his obligation to respond to the Complaint—justified his failure to respond, and he has meritorious defenses to Plaintiff's claims. ECF No. [18]. Both Motions are fully briefed.

## II. LEGAL STANDARD

### A. Set Aside Default

Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause" is a "mutable" and "liberal" standard, "varying from situation to situation" depending on the facts of a given case. *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). The good cause standard that is utilized in setting aside an entry of default is less rigorous than the required showing to set aside a default judgment. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). Further, the Eleventh Circuit maintains a "strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). In considering whether to set aside a clerk's entry of default, "[c]ourts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana*, 88 F.3d at 951. Put differently, courts consider: "(a) whether the default was culpable or willful; (b) whether setting it aside would prejudice the adversary, (c) whether the defaulting party presents a meritorious defense; (d) whether there was significant financial loss to the defaulting party; and (e) whether the defaulting party acted promptly to correct the default." *S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011) (citation omitted).

### B. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive

cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone.. . . [N]o such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

## III. DISCUSSION

### A. Motion to Set Aside Clerk's Default

In the Motion to Set Aside Clerk's Default, Defendant argues that his failure to respond was a matter of excusable neglect. ECF No. [18] ¶ 5. He did not realize that his communications with Plaintiff's counsel did not satisfy his obligation to respond and only learned as much on June 17, 2026. *Id.* ¶ 2. His actions broadly demonstrate good faith intent to participate in this litigation. *Id.* ¶¶ 3, 4. Moreover, Defendant argues that Plaintiff will not be prejudiced by the setting aside of the Clerk's default given the early stages of the litigation, and Defendant believes he possesses meritorious defenses, including that "the investment was made with full knowledge and written acknowledgment of the risk of loss." *Id.* ¶¶ 7, 8.

Plaintiff responds, first, that Defendant's settlement communications with Plaintiff's counsel do not excuse his failure to timely respond, as alleged misunderstanding of the Federal Rules of Civil Procedure is not good cause. ECF No. [21] at 6–7. There is nothing to suggest that Plaintiff's counsel caused Defendant to believe that informal settlement communications sufficed as a response; indeed, Plaintiff's counsel, while disclaiming providing legal advice, told Defendant that a formal response was required. *Id.* at 7–8. Moreover, the record shows that Defendant was responsible for any delay. *Id*. In addition, *pro se* status does not excuse noncompliance with the Rules, and Defendant has not established a meritorious defense. *Id.* at 9–10. Finally, Plaintiff will be prejudiced by further delay. *Id.* at 10.

Defendant replies that his failure to respond "resulted from excusable neglect." ECF No. [25] ¶ 4. Moreover, Plaintiff would suffer no prejudice from the brief delay. *Id.* ¶ 5.

As noted above, in assessing whether to set aside a clerk's entry of default, courts consider: "(a) whether the default was culpable or willful; (b) whether setting it aside would prejudice the adversary, (c) whether the defaulting party presents a meritorious defense; (d) whether there was significant financial loss to the defaulting party; and (e) whether the defaulting party acted promptly to correct the default." *Johnson*, 436 F. App'x at 945 (citation omitted). It is well-established in this circuit that *pro se* litigants are required to "conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). In light of that, a *pro se* litigant's unfamiliarity with the rules governing his case is rarely excusable neglect when a *pro se* party fails to timely fulfill his obligations. *See, e.g.*, *White v. Santander Consumer USA, Inc.*, No. CV 120-115, 2021 WL 964278, at *4 (S.D. Ga. Mar. 15, 2021) ("Although Plaintiff is proceeding pro se and pro se filings are liberally construed, liberal construction does not mean liberal deadlines." (internal quotation marks and citations omitted)); *Kuriger v. Kijakazi*, No. 2:22-CV-34, 2023 WL 4996108,

at *2 (S.D. Ga. May 1, 2023) ("Even if the Court credited Plaintiff's explanation of her delay, Plaintiff's unrepresented status does not excuse mistakes regarding procedural rules." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))); *In re Bailey*, 521 F. App'x 920, 921-22 (11th Cir. 2013) (declining to find excusable neglect where pro se debtor erroneously believed that "he had 30 days from the bankruptcy court's entry of final judgment to appeal, instead of the 14 days that Rule 8002 requires"). Moreover, noncompliance with the time specified in the rules based on unfamiliarity is rarely deemed "good cause" to set aside default entered based on a failure to timely respond. *Madison v. BP Oil Co.*, 928 F. Supp. 1132, 1137 (S.D. Ala. 1996) (collecting cases).

In light of this well-established law, Defendant's lack of understanding of his obligation to formally respond cannot justify his failure to do so. Even if the Court credits Defendant's allegation that he only learned of his obligation to formally respond on June 17, 2026, the Court's analysis would remain unchanged—*pro se* litigants are required to conform with the relevant rules, and a "misunderstanding of unambiguous procedural rules" cannot constitute excusable neglect. *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997 (11th Cir. 1997). Moreover, by Defendant's own account, he learned on June 17, 2026 of his obligation to file a formal response and nonetheless did not file a response by the Court's stated deadline of June 23, 2026. ECF No. [8]. That is, Defendant's own facts show a willful decision not to respond or seek an extension of time within the time allotted by the Court. Taken together, these facts show a lack of good cause.

Moreover, Defendant does not adequately describe any meritorious defenses. Defendant's entire discussion of meritorious defenses is found in one sentence—namely, that he would argue that "the investment was made with full knowledge and written acknowledgment of the risk of loss." ECF No. [18] ¶ 8. "It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its

claim." *Turner Broadcasting System, Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1002 (N.D. Ga. 1983), *aff'd*, 742 F.2d 1465 (11th Cir.1984). Indeed, it is "absolutely essential" that a defendant "claim with specificity" meritorious defenses. *Matter of Rogers*, 160 B.R. 249, 254 (Bankr. N.D. Ga. 1993) (quotation omitted).

> [T]he defendant must do more than just merely allege that it has a defense to this action. In contrast to the customary response to a complaint, there exists a higher burden of proof to establish a meritorious defense in a motion to remove an entry of default. While a mere denial may suffice in an answer, the defendant must go beyond a mere denial and present more evidence at this stage of the proceeding to justify setting aside the default.

*Id*.

Here, Defendant offers nothing beyond his one-sentence assertion of a defense. That is far from the level of detail or specificity required of him at this stage. It is certainly far from the "clear statements" contemplated by the law of this circuit. *Rodriguez v. Brim's Food, Inc.*, No. 13-cv-20600, 2013 WL 3147348, at *3 (S.D. Fla. June 19, 2013) (citations omitted). The absence of a well-pled meritorious defense counsels strongly against setting aside the clerk's entry of default here.

On the aforementioned grounds, the Court finds that setting aside Defendant's default would be inappropriate. As such, the Motion to Set Aside Clerk's Default is denied.

**B. Motion for Default Final Judgment**

In the Motion for Default Final Judgment, Plaintiff argues that Defendant failed to timely respond, and the well-pled allegations establish his liability. ECF No. [14] at 4–5. Furthermore, Plaintiff argues she is entitled to damages, interest, and costs that can be determined from the record. *Id.* at 5.

Defendant responds that he has filed a Motion to Set Aside Clerk's Default, that his failure to respond was not willful, that he intends to vigorously defend, and that federal courts strongly favor resolving disputes on the merits. ECF No. [19].

Plaintiff replies that Defendant's settlement communications do not excuse his failure to timely respond. ECF No. [21] at 6–7. Furthermore, Plaintiff's counsel did not mislead Defendant or agree to any extension, and Plaintiff's *pro se* status does not excuse his noncompliance with the applicable Rules. *Id.* at 8–9. Finally, Defendant has not established a meritorious defense, Plaintiff will be prejudiced by further delay, and Plaintiff's Motion for Default Final Judgment should not be denied based on Defendant's untimely filing. *Id.* at 9–11.

In assessing whether Plaintiff's allegations establish liability, the Court proceeds by analyzing each Count.

**i. Count I**

In Count I, Plaintiff contends that Defendant violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. ECF No. [1] ¶ 71. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to "use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 is one such rule prescribed by the SEC, which prohibits any person, in connection with the purchase or sale of a security, from (1) "mak[ing] any untrue statement of a material fact" or (2) "omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "[T]he Supreme Court has implied a private right of action for investors under Rule 10b-5." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019).

In essence, to allege a violation of § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter—a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (internal quotation marks and footnote call number omitted)). "To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b-5 must satisfy not only the run-of-the-mill federal notice-pleading requirements [in] Federal Rule of Procedure 8(a)(2), but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995." *Carvelli*, 934 F.3d at 1317–18. Rule 9(b) requires plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). And the Private Securities Litigation Reform Act of 1995 requires plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

Here, Plaintiff meets this standard and points to specific material misrepresentations or omissions, elaborating that they were made by Defendant directly to Plaintiff in or about October 2023. ECF No. [1] ¶¶ 72–74. Plaintiff alleges scienter, as she alleges that Defendants "knew, or recklessly disregarded, that the Company was not operating as represented and was subject to significant undisclosed risks." *Id.* ¶¶ 58–69, 75. Plaintiff alleges that the misrepresentations concerned the underlying company in which Plaintiff was to make an investment. *Id.* ¶¶ 72, 73. Plaintiff alleges reliance. *Id.* ¶¶ 80, 82. Plaintiff alleges economic loss of $100,000. *Id.* ¶ 83. And Plaintiff alleges a causal connection between the material misrepresentations and the economic

loss. *Id.* ¶ 84. Thus, the Court finds Plaintiff's well-pled allegations regarding Count I sufficient to establish Defendant's liability.

**ii. Count II**

In Count II, Plaintiff alleges violation of Section 12(a)(2) of the Securities Act of 1933. *Id.* ¶ 87. "Section 12(a)(2) of the Securities Act creates a private cause of action against persons who offer or sell a security 'which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *Ehlert v. Singer*, 245 F.3d 1313, 1315–16 (11th Cir. 2001) (quoting 15 U.S.C. § 77l(a)(2)). A plaintiff "must allege [only] that there was a material misrepresentation or omission," *Ehlert*, 245 F.3d at 1316, and need not prove an intent to defraud or knowledge of the misrepresentation or omission. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82 (1983). A claim under § 12 must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006).

Importantly, in *Gustafson v. Alloyd Company*, the Supreme Court held that the term "prospectus," as used in the statute, "only applies to public offering of securities, not to private agreements to sell securities." *Energy Supreme LLC v. Supreme Energy Res., Inc.*, Case No. 0:15–cv–60034–UU, 2016 WL 3948061, at *8 (S.D. Fla. Mar. 14, 2016) (citing 513 U.S. 561 (1995)). Thus, to trigger § 12(a)(2) liability, "a seller must sell via a prospectus, or an oral communication relating to a prospectus, documents related to a public offering by the issuer." *Song v. Fish*, No. 5:23-CV-392-JSM-PRL, 2024 WL 2304362, at *3 (M.D. Fla. Jan. 17, 2024) (citing *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 677 (11th Cir. 2010)).

Because Plaintiff alleges a private placement and not a public offering, ECF No. [1] ¶¶ 7, 44–47, the Court does not find that the allegations in the Complaint support a finding of Defendant's liability on Count II.

**iii. Count III**

In Count III, Plaintiff alleges control person liability under § 20(a) of the Securities Exchange Act. ECF No. [1] ¶ 97. Section 20(a) imposes liability on control persons of companies that violate the securities laws. *See* 15 U.S.C. § 78t(a). To state a § 20(a) claim, Plaintiffs must allege:

> (1) [the corporate entity] committed a primary violation of the securities laws; (2) the Individual Defendants had the power to control the general business affairs of [the corporate entity]; and (3) the Individual Defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability.

*In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1274 (S.D. Fla. 2017) (alterations added; quotation marks and quotations omitted). Put differently, "[t]o show control person liability under Section 20(a), a plaintiff must allege that: (1) the company violated § 10(b); (2) the defendant had the power to control the general affairs of the company; and (3) the defendant had the power to control the specific corporate policy that resulted in the primary violation." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1252 (N.D. Ga. 2019) (citations omitted). In the Eleventh Circuit, only defendants of the "entity *primarily* liable at the time the entity violated the securities laws" can be held liable for § 20(a) liability. *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996) (emphasis added). The question of whether a given defendant exercises control over the liable entity is a factual inquiry that courts often find inappropriate for resolution at the pleadings stage.

*See, e.g.*, *Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1190 (S.D. Fla. 2005).

Here, Plaintiff has adequately alleged control person liability. She properly alleges, as discussed above, a violation of § 10(b). She alleges that Defendant had the power to control the affairs of the underlying company. ECF No. [1] ¶ 98. And she alleges that Defendant had and exercised control over the "specific acts and statements that constitute the primary violations[.]" *Id.* ¶ 99. These allegations, taken as true, are sufficient to establish Defendant's liability on Count III.

**iv. Count IV**

In Count IV, Plaintiff alleges fraudulent inducement by Defendant. To state a claim for fraudulent inducement, a plaintiff must allege that (1) the defendant made a false statement concerning a material fact; (2) the defendant knew the representation was false; (3) the defendant intended the representation to induce the plaintiff's reliance; and (4) the plaintiff was injured in justifiable reliance on the misrepresentation. *See Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (citation omitted). Additionally, because a claim for fraudulent inducement must also satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement, the allegations in the pleading must set forth "some delineation of the underlying acts and transactions which are asserted to constitute fraud." *Kronotex USA, LLC. v. Hodges*, No. 07-21939 CIV, 2008 WL 11406179, at *4 (S.D. Fla. Apr. 25, 2008) (citation omitted).

Plaintiff has properly pleaded allegations sufficient to establish Defendant's liability for fraudulent inducement. Plaintiff alleges specific false statements of material fact. ECF No. [1] ¶¶ 36, 104. Plaintiff alleges that Defendant knew or recklessly disregarded that his statements were false or misleading at the time they were made. *Id.* ¶ 105. Plaintiff alleges that Defendant intended

for Plaintiff to rely on his statements and that Plaintiff did rely on them, as she would not have invested but for Defendant's conduct. *Id.* ¶¶ 106–08. Plaintiff alleges that she suffered damages as a result of that reliance. *Id.* ¶¶ 9, 109. Those allegations are sufficient to establish Defendant's liability.[1]

**v. Count V**

In Count V, Plaintiff raises a claim for promissory estoppel against Defendant. *Id.* ¶ 111. Promissory estoppel applies when "there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013). "The doctrine of promissory estoppel 'is unavailable when there is a written contract between the parties covering the disputed promises.'" *Hartel v. Unity Recovery Ctr., Inc.*, No. 16-80471-CIV, 2017 WL 1291952, at *4 (S.D. Fla. Jan. 26, 2017) (quoting *Univ. of Miami v. Intuitive Surgical, Inc.*, 353 F. Supp. 2d 1230, 1236 (S.D. Fla. 2005)).

Plaintiff's allegations satisfy this standard. First, Plaintiff alleges that Defendant made clear and definite promises to Plaintiff that her investment would be repaid in full. ECF No. [1] ¶¶ 52,

---

[1] Plaintiff does allege that the Subscription Agreement between the parties "disclaim[ed] reliance on representations outside the offering materials." ECF No. [1] ¶ 46. It is true that there is some indication in Florida law that non-reliance clauses may negate a claim for fraud. *Billington v. Ginn–La Pine Island, Ltd.*, 192 So.3d 77, 84 (Fla. 5th DCA 2016) ("[W]e hold that the 'non-reliance' clauses in this case negate a claim for fraud in the inducement because Appellant cannot recant his contractual promises that he did not rely upon extrinsic representations."). However, other courts find that non-reliance clauses are insufficient to defeat a fraud claim. *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So.3d 517, 520 (Fla. 4th DCA 2011) ("It has been the law of this state for some time that a claim of fraud in the inducement will not be defeated by contract clauses"). In either case, the courts agree that to defeat a fraud claim, a non-reliance clause must be "sufficiently express, specific, and unambiguous with respect to the representation at issue." *Le Macaron, LLC v. Le Macaron Dev. LLC*, No. 8:16-CV-918-17TGW, 2016 WL 6211718, at *4 (M.D. Fla. Oct. 24, 2016). Further, the Eleventh Circuit has recognized that to negate a fraud claim in Florida, a contract must "expressly state[ ] that it is incontestable on the ground of fraud." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028 (11th Cir. 2017). Plaintiff makes no allegation that such a specific provision existed in the Subscription Agreement, so the Court is not swayed by the presence of an anti-reliance clause.

53, 111. Plaintiff alleges that Defendant reasonably expected Plaintiff to rely on these promises, and Plaintiff did so rely, delaying legal action based on the promises. *Id.* ¶¶ 112, 113. Plaintiff alleges that injustice would result if the promises are not enforced, as Defendant has refused to repay Plaintiff any portion of her investment and has ignored all subsequent communications. *Id.* ¶¶ 55, 115. These allegations came in July 2024, after the signing of the Subscription Agreement, and thus are not covered by the Subscription Agreement. *Id.* ¶ 52. These allegations are sufficient to establish Defendant's liability as to Count V.

**vi. Count VI**

In Count VI, Plaintiff alleges unjust enrichment against Defendant. *Id.* ¶¶ 118–22. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). "In Florida, the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

Plaintiff's allegations support finding Defendant liable on this count. Plaintiff alleges that she conferred a benefit upon Defendant in the form of her $100,000 investment. ECF No. [1] ¶ 118. Plaintiff alleges that Defendant "knowingly accepted and retained that benefit" and have failed to return the funds as promised. *Id.* ¶¶ 119, 120. Plaintiff contends it would be inequitable for Defendant to retain Plaintiff's funds without compensation. *Id.* ¶ 121. These allegations are sufficient to establish Defendant's liability.

**vii. Damages**

As discussed above, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See Smyth*, 420 F.3d at 1232 n.13; *see also Evans*, No. 2013 WL 12138555, at *1 (following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

Here, Plaintiff's damages are clear and readily discernable from the Complaint and the Motion for Default Final Judgment. Plaintiff seeks the $100,000 she invested with Defendant. ECF No. [1] at 5–6. Plaintiff has submitted a Declaration and supporting exhibits establishing the amount invested, Defendant's failure to return the investment funds, and the resulting damages. ECF No. [14-1]–[14-7]. Accordingly, the Court finds Plaintiff's damages of $100,000 appropriately ascertainable, such that an evidentiary hearing is unnecessary.[2]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Set Aside Clerk's Default, **ECF No. [18]**, is **DENIED**.
2. Plaintiff's Motion for Default Final Judgment, **ECF No. [14]**, is **GRANTED IN PART AND DENIED IN PART**. It is granted as to Counts I, III, IV, V, and VI. It is denied as to Count II.
3. The Stay Motion, **ECF No. [20]**, is **DENIED AS MOOT**.

---

[2] The Court notes that Defendant separately filed a request that the Court withhold ruling on Plaintiff's Motion for Default Final Judgment, ECF No. [20] ("Stay Motion"). In light of the Court's resolution of both Motions, the Court denies the Stay Motion as moot.

4. Default Final Judgment is granted in favor of Plaintiff and against Defendant in the amount of $100,000, plus—as applicable—attorneys' fees and costs.
5. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 1, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record